L. R. THOMPSON et al., Appellants,

v.

D. E. McAlister GRAHAM et vir, Appellees.

No. 3519.

Court of Civil Appeals of Texas.

Eastland.

March 11, 1960.

Rehearing Denied April 1, 1960.

Dan Abbott, Abilene, for appellants.

Wagstaff, Harwell, Alvis & Pope, Bradbury, Tippen & Brown, Abilene, Upton, Upton, Baker & Griffis, San Angelo, Mays, Leonard & Moore, Sweetwater, for appellees.

GRISSOM, Chief Justice.

In October, 1953, L. R. Thompson, an employee of Ace Drilling Company, was injured by the falling of a steel ladder which had been placed in position, but not bolted to the derrick floor, by employees of the Grahams, who had moved the drilling rig to a new location. Thompson and the workmen's compensation insurance carrier for Ace Drilling Company, who had paid Thompson compensation, brought this suit for damages against the Grahams who were alleged to have negligently caused Thompson's injury by failing to fasten the ladder to the floor. The case was sub-

mitted to a jury and, after return of an incomplete verdict, judgment was rendered for the Grahams. Thompson and the insurance carrier have appealed. (This is the second appeal. See 318 S.W.2d 102.)

■ Issue number one inquired whether, at the time and place of Thompson's injury, it was "customary" for employees of a trucking company hired to move an oil rig to bolt the stairs to the derrick floor. Neither this, nor the accompanying issues submitting whether the failure to conform to such custom, if any, was negligence and a proximate cause of Thompson's injury was answered. This is, apparently, the only submission of plaintiffs' case. Other issues inquired, among other things, whether Thompson knew, or should have known, the stairs were not bolted and whether the failure of the employees of the drilling company to bolt the stairway, "if you believe it was their duty to do so", was the sole proximate cause of the accident. They were not answered. After the Graham trucking company had delivered the rig to Ace's new drilling site and set the stairs in place, the drilling company had Thompson and others run a water line under the stairway. The jury found (12) that Thompson and other employees of the drilling company pulled the stairs away from the rig floor. It did not answer whether this was negligence or a proximate cause of Thompson's injury. It found (17–a) that Thompson's injury was not the result of an unavoidable accident. Ace Drilling Company, acting through Payne, had employed the Grahams, who were in the trucking business, to move Ace's drilling rig to the new location. The trucking company consisted of Paul Graham and his wife. Paul Graham was its manager. The jury found that it was the "understanding" between Payne and Paul Graham that the trucking company was not to bolt the stairs to the floor. Only said three issues were answered. The verdict was signed by the foreman, returned into and accepted by the court and the jury was discharged on June 3, 1959. No objection to receipt of said verdict was made. On June 4, 1959, appellees filed a motion for judgment on said verdict. Thompson replied thereto on June 18th. In that reply Thompson contended that the court could not render a judgment on the verdict. Under the decision in Lewis v. Texas Employers' Insurance Ass'n, 151 Tex. 95, 246 S.W.2d 599, appellants waived the right to complain of receipt of the incomplete verdict by failing to object to its reception before the jury was discharged. Davis v. Texas Employers' Insurance Ass'n, Tex.Civ.App., 257 S.W.2d 755. However, they do not here complain of its receipt. They contend that no judgment could be based thereon.

Appellants' first point is that the court erred in rendering judgment for appellees on said verdict and, in the alternative, that it erred in overruling appellants' motion to disregard such findings and declare a mistrial. Their second point is that the court erred in sustaining appellees' motion for judgment on the verdict and in refusing to submit "failure to warn". The third point is that the court erred in submitting the "understanding" between said parties that the Grahams were not to bolt the steps and in using same as a basis for the judgment, because it was not an ultimate issue. All said points are briefed together. Appellants' principal contentions under said points are that (1) said verdict is insufficient to form the basis of a judgment and that (2) the court erred in not submitting issues inquiring whether the trucking company was guilty of negligence in failing to warn Thompson that the steps were not bolted.

In appellants' original petition, they alleged the trucking company failed to bolt the stairs to the derrick floor and that this was negligence and a proximate cause of Thompson's injury. This issue was not submitted. The record does not show it was requested. In their supplemental petition they alleged the trucking company had the "legal burden" to bolt the stairs. They further alleged therein that, if the Grahams moved the rig under a contract with Ace

Drilling Company, said contract required them to bolt the stairs to the rig floor and that their failure to bolt was, therefore, negligence and a proximate cause of Thompson's injury. There was an attempt to submit this issue by the submission of issue 4, with the burden placed on the defendants. It was answered favorably to defendants. In their trial amendment they alleged it was "usual and customary" for a trucking company to bolt the stairs. This issue was submitted but not answered. The jury found (4) that it was the "understanding" of the parties that the Grahams were not to bolt the stairs. Payne, who acted in such matters for Ace Drilling Company, Thompson's employer, testified he supervised the moving of their drilling rig; that he employed the Grahams to move the rig for about five years, because the Grahams gave them a better "rig move" than anyone else, took better care of the equipment and "moved it in a shorter length of time and the time is what costs us". Payne testified he hired the Grahams to move Ace's equipment to the new location and set it in place "and then my crews rigged it up from there on". He testified it was his understanding with the Grahams that the trucking company was to do nothing more than transport the equipment and set it in place, so that the drilling crew could fasten it together. He was asked, "Now in regard to pinning any steps, under your agreement was it your understanding that McAlister Trucking Company was supposed to pin any steps?" He answered, "No". He further testified that the stairs were bolted only about 25 percent of the time because, unless they were pulled or pushed, they wouldn't fall. He testified that when the drilling equipment arrived at a new location he had his crew present; that they were present when the Grahams arrived with the rig at the new location where Thompson was injured. He testified that when a rig was to be moved the bolts to fasten the steps were removed by the drilling crew and put where they could find them when the equipment arrived at the new drilling site. He was asked whether the Grahams' employees knew where these bolts were kept. He replied that the trucking company employees probably wouldn't be there when the bolts were removed, because the time of the trucking company was the big expense in moving and employees of the drilling company did everything possible to have it ready to move when the trucking company arrived and, likewise, to take care of the details after the drilling rig was delivered at the new site because it was much cheaper to have his employees do it. He testified, in substance, that the steps would not have fallen if the drilling crew had not moved them in laying the water line, but that if they had been previously bolted, the drilling crew would have had to unbolt the steps to lay the water line. He testified that he had been with that rig and stairs from the time they were bought, in 1948, until after Thompson's injury. Mr. Graham's testimony was to the same effect. He testified that it was his understanding of the agreement with Ace Drilling Company that the trucking company was only to deliver the equipment to the new site and set it in place, where it was to be "bolted together or pinned together or secured by the Ace drilling crews—".

Appellants' objection to the submission of issue 4 was that it inquired about an understanding between Payne and Graham and there was "no evidence of any contract between" them "whereby said understanding could arise" and it assumed there was such an understanding. It did not assume there was such an understanding. We think there was evidence of a contract from which such understanding could arise. Both parties testified as to what the Grahams agreed to do. The things they said they agreed to do did not include bolting the stairs. We do not approve the form of the issue, but it was not subject to the objections made. The two persons that made the agreement testified to what the Grahams were employed to do. The testimony as to what the Grahams agreed to

do did not include bolting the stairs and they understood they were not to do so.

The Grahams had no duty under their contract to bolt the stairs, a duty would not have been established by a mere finding that it was customary for truckers to bolt the stairs, nor would such finding, alone, have established a duty to warn Ace's employees that the Grahams had not bolted the stairs. Honea v. Coca Cola Bottling Company, 143 Tex. 272, 183 S.W.2d 968, 971, 160 A.L.R. 1445.

█ To recover, Thompson had the burden to show that the Grahams had a duty to bolt the stairs, or, possibly, under some circumstances, a duty to warn Thompson that they had not done so. In the absence of a contractual duty to bolt the stairs, what possible duty is suggested? See 65 C.J.S. Negligence § 4, p. 335. Plaintiff's case was submitted by issue 1, inquiring whether it was customary, in that vicinity, for employees of a trucking company that moved an oil rig to bolt the stairs. If the jury had found there was such a local custom, would that have shown that the Grahams had a duty to bolt? Such finding, alone, would not have established such duty. Cameron Compress Co. v. Whitington, Tex.Com.App., 280 S.W. 527, 529. Trinity Universal Ins. Co. v. Rogers, Tex. Civ.App., 215 S.W.2d 349, 356; Comanche Duke Oil Co. v. Texas Pacific Coal & Oil Co., Tex.Com.App., 298 S.W. 554, 563. There was no evidence that the Grahams knew of such a custom, or that Thompson had such knowledge, or that he relied thereon in going under the ladder.

If the court had submitted the question of the Grahams' negligence in failing to warn Thompson that they had not bolted the stairs and the jury had answered it favorably to Thompson, the finding would not have been controlling. The evidence did not show a duty to warn. 65 C.J.S. Negligence § 4, pp. 332, 335; T. J. Mansfield Construction Co. v. Gorsline, Tex. Com.App., 288 S.W. 1067, 1070; and In-

dependent-Eastern Torpedo Co. v. Carter, Tex.Civ.App., 131 S.W.2d 125, 126.

█ The custom of trucking companies in that vicinity was not a controlling issue. Evidence of custom is admissible on the issue of negligence. It is, sometimes, admissible as an aid in interpreting an ambiguous or incomplete contract. A finding of custom, alone, could not have determined the liability of defendants. Gulf, Colorado & Santa Fe Ry. Co. v. Irick, Tex.Civ.App., 116 S.W.2d 1099 (Writ Dis.); Great Atlantic & Pacific Tea Co. v. Garner, Tex.Civ.App., 170 S.W.2d 502, 505 (Ref.W.M.); Ricks v. Culp, Tex. Civ.App., 206 S.W.2d 285 (Ref.N.R.E.); Kerr v. Taylor, Tex.Civ.App., 317 S.W. 2d 589, 592 (Writ Dis.); 42 Tex.Jur. 851.

█ The real questions presented by appellants' first three points are: (1) Does the answer to issue 4 compel a judgment for defendant? (2) Was the refusal to submit failure to warn reversible error? We have concluded that the answer to issue 4 compels a holding, in the absence of other findings neither submitted nor requested, that the Grahams had no duty to bolt the stairs and rendition of judgment for appellees. 41-B Tex.Jur. 787; Lamb v. Isley, Tex.Civ.App., 143 S.W.2d 202, 204 (Writ Ref.). There being no duty to bolt, the failure to bolt was not negligence. 65 C.J.S. Negligence § 4, pp. 332, 335; 30 Tex.Jur. 649; T. J. Mansfield Const. Co. v. Gorsline, Tex.Com.App., 288 S.W. 1067, 1070; City of Wichita Falls v. Swartz, Tex.Civ.App., 57 S.W.2d 236, 237; Independent-Eastern Torpedo Co. v. Carter, Tex.Civ.App., 131 S.W.2d 125; Crump v. Hellams, Tex.Civ.App., 41 SW.2d 288, 289; Comanche Duke Oil Co. v. Texas Pacific Coal & Oil Co., Tex.Com. App., 298 S.W. 554, 563. See also Gulf, Colorado & Santa Fe Ry. Co. v. Evansich, 61 Tex. 3, 6; Cameron Compress Co. v. Whitington, Tex.Com.App., 280 S.W. 527, 530. There was no evidence showing a duty to warn.

To summarize, we call attention to the following: (A) Appellants alleged in their original petition that the Grahams failed to bolt the stairs and that this was negligence or a proximate cause of Thompson's injury. This issue was not submitted, nor was it requested. The record does not show that exceptions thereto were sustained and that appellants were compelled to file additional pleadings. (B) In their supplemental petition appellants alleged that, if the Grahams moved the rig under a contract with Ace, the contract required them to bolt the stairs. This issue was submitted and answered in favor of the defendants. (C) Apparently, the only attempt at submission of appellants' case, if it was included in issue 4, was contained in the issue whether it was customary, in that vicinity, for people in the Grahams' position to bolt the stairs. If it had been answered, and answered favorably to appellants, it would not have authorized a judgment for appellants, nor would it have conflicted with the answer to issue 4. (D) Failure to submit the requested issue relative to failure to warn was not error because no duty to warn was shown. The requested issue relative to failure to warn and the submitted issue relative to custom were immaterial. Therefore, the court did not err in rendering judgment on the verdict without an answer to the issue on custom. Silvers v. Payne, Tex.Civ.App., 282 S.W. 876, 879; Citizens Nat. Bank v. Overstreet, Tex.Civ.App., 77 S.W.2d 250, 253; Sears v. Sears, 45 Tex. 557; O'Brien v. Hilburn, 22 Tex. 616; Brokaw v. Collett, Tex.Com.App., 1 S.W.2d 1090, 1092. Said points must, therefore, be overruled.

Appellants' fourth point asserts the court erred in sustaining exceptions to plaintiffs' petition and in requiring them to allege it was customary for persons in the Grahams' position to bolt the stairs. It must be overruled because no such order, or exception thereto, is shown. Furthermore, if the original pleadings had remained and the cause submitted accordingly, appellants would still be confronted with the necessity of establishing a duty and breach thereof.

Appellants' remaining point is that the court erred in holding appellants' cause of action was barred by limitation. This point is not of controlling importance because, under our holding above, the judgment was correct regardless of any decision of this question.

The judgment is affirmed.